Appellant, Mr. Capel for the Appellants, Mr. Rotherford for the Appellant. Good morning, Your Honor. Good morning. First of all, I thank God for bringing me here, allowing me to get here. Your Honor, I submit that the trial court committed reversible error when it denied the defendant's motions for new trial, which were based on the argument that the indictment had been constructively amended. The indictment, Your Honors, were not only constructively amended, it was actually amended. It was amended by the court when the court interpreted co-conspirators, both known and unknown, to include people who the grand jury didn't even know about at the time that they handed down the indictment. The court said that the plain language of the indictment permitted the court to interpret the indictment to include these four witnesses, which the indictment did not give a sufficient description of the facts to enable the defendants to prepare a defense. Were these witnesses disclosed to the defense prior to trial? I'm talking about Herrera, Chacon, Reda, Andrade, Cotton, not even before trial. I believe that one of them was disclosed about a week before trial, and the others were disclosed during trial. The defendants had submitted a bill of particulars which had been denied, which I submit was an abuse of discretion because it prevented them from giving... But you haven't raised that on appeal. I'm sorry? You haven't raised that issue on appeal. Well, it's not one of my main arguments, but it is part of my argument. As to the witness that was disclosed a week before trial, why is that not sufficient notice? Because they did not have sufficient amount of time to prepare because they were still surprise witnesses. Also, they could still be charged with other crimes that these witnesses may have committed because they are not listed in the indictment. These same four witnesses, the indictment was never unsealed. Therefore, they were never given the opportunity to argue that they were never given the opportunity to object to the witnesses testifying or being unidentified. The indictment was also amended by the government. That was a constructive amendment. The government, by offering evidence that was different from what was in the indictment, created such a variance that... The four witnesses testified to money laundering. They testified to importing drugs from Honduras. Neither one of those, money laundering and importing drugs from Honduras, was not part of the indictment. The government argues that... Nor was money laundering part of the jury instructions. The jury instructions very clearly referred to the indictment's allegations of conspiracy to manufacture and distribute cocaine. I'm sorry? There was nothing in the jury instructions that would have guided the jury to rely on any money laundering charge. But there was a paragraph that said that all of the co-conspirators were agents of one another. If they were all agents of one another, the jury could have very easily found my clients guilty of money laundering by David Andradez. No, by Mallory Chacon. Because they were all agents of one another. The jury didn't return a verdict on money laundering. Well, we don't know that. That's the part that we can't determine at this time. The jury may have decided that my clients were guilty for money laundering, even though it's not in the indictment. Because the government put forth evidence that millions of dollars was laundered by... I'm sorry? Are you aware of any constructive amendment case where the jury instructions did not include instructions about the other offenses, the undicted offenses? I think we always look to whether they were in the jury instructions. The jury instructions, based on the plain language of the jury, and the jury instruction that I am referring to is in the Joint Appendix, first volume at 335. It says, And whether either or both defendants were members, you may consider the acts and statements of any other member of the alleged conspiracy, done or made during the course of and in furtherance of the conspiracy, as evidence against each defendant whom you have found to be a member of the conspiracy. So if, and the court has clearly decided that these four witnesses are co-conspirators, and you've got one co-conspirator saying that she money laundered millions of dollars, then their acts can be attributed to the acts of the defendants. You've also got David Andrada, who is importing drugs from Honduras, which was not mentioned in the indictment. And that is also, they could have been convicted of that. Mr. Capello, you claim prejudice, that your client was prejudiced by the difference between what was charged in indictment and what was proved at trial. And the prejudice you're claiming is a lack of notice because the indictment was less specific than it could have been about the people and the places? Yes. That's the notice? And then the government called the witnesses, and the claim is that the defendant was surprised and the defense was hobbled by the actual people who came and the places, the addition of Honduras as a source place, right? Yes. Can you point us to the record where in the district court there was any objection or request for more time or any evidence of the surprise, the lack of notice? Any place where that was raised at a point where the district court might have done something to cure it? Or is that not a requirement? No, I cannot. However, the government has admitted that the grand jury did not know about these people when they indicted the defendants. They were unknown. They were not included. They were not the people for which the defendants were indicted for conspiring with. They admit that. So how can we, after the fact, say that that's who the grand jury meant? Automatically, they had no notice because the grand jury had no notice. Anything else? No, thank you. Okay, thank you. Thank you. Good morning, Your Honors, and may it please the court. Michael Rotker from the Department of Justice on behalf of the United States. I have three points that I'd like to just make in response to my opposing counsel. First, Judge Millett, in response to your question about disclosure, the government did make disclosure of the four witnesses that my opponent was discussing. There was a court order that was entered in December of 2015, that's part of the record, that allowed the government to make rolling disclosure of these witnesses because there were safety and security concerns, and the government complied with that order. So the names were known, and they were disclosed consistent with Judge Colart-Catelli's order. I think it's December 11, 2015. I don't have the docket number. How much advance notice did they have? I believe the judge said that we had to make disclosure on the Thursday of the week before the witness was scheduled to testify. So Thursday for maybe Monday testimony. Could have been. But again, in response to the related question that the court has asked about, there's nothing in the record to indicate that these defendants were caught by surprise. They didn't request a continuance. There were no protestations. There was no claim that they couldn't adequately cross-examine. There's no claim they didn't have any adequate opportunity. So, you know, I think that the record, sort of like the dog that didn't bark, I think now it's a little late to be coming in and saying there's no surprise when there was no effort to remedy that below. The other point I'd like to make. There was a post-trial motion, though. I'm sorry? Post-trial motion when they looked at the whole thing. They did. When you say there was no effort to remedy. I'm sorry, during the trial. There was no contemporaneous. I'm sorry. Arguably, one can't really assess whether there's been a variance or a constructive amendment until one looks at the entire trial record. And this goes, I guess, to our standard of review, whether we would require, whether we would deem this to be preserved by the post-trial motion. Right. But preservation or not, I think if the gravamen of the prejudice claim is a lack of notice, then we have to look contemporaneously to see what the objection was. And I think when, if somebody, just as a matter of human nature, if someone's truly surprised, the normal course is to express that to the district court to ask for a continuance. On the question of constructive amendment as well, Your Honors, again, Judge Millett, in response to your question, the government's not aware of any case from this circuit, or frankly any circuit, that has found a constructive amendment where the jury was not given instruction. In fact, just as a juxtaposition, I cited the court to a case called the Brendau from the First Circuit, which I think is a quintessential example of a constructive amendment. You had the indictment charging a defendant with conspiracy to commit murder, but the evidence and the jury instructions went to the jury on a theory of substantive murder. Nobody caught it, and so it went to the jury, and therefore they were permitted to convict on a basis that was not charged. We don't have that situation here. These witnesses were testifying about misdeeds. There were no jury instructions. And unless the court is going to indulge an assumption that juries are not going to follow their instructions, there's no basis for finding a constructive amendment. Can I ask you about the multiple conspiracies issue? Sure. What was the test the district court was to apply in deciding whether a multiple conspiracies instruction should have been given? I guess two parts to that answer. The general test for any theory of defense instruction is whether there's sufficient evidence by which a fact finder could find in this case. Could any reasonable jury have come to that conclusion? Yeah, I think the case sprays it somewhat differently, but I think that's the gist of it is whether there's sufficient evidence that would allow the jury to find multiple conspiracies. And then in applying that standard, Judge Kohler-Catelli followed this court's precedence to a tee, and those precedents, which date back to Tarantino in the late 80s and have been followed for decades ever since, the sort of three-factor test about common goal, interdependence, and overlap. What Judge Kohler-Catelli did— The interdependence between—are the two conspirators here the co-defendants or— I'm sorry? The two—yes. They're both the brothers' co-defendants. But is that the conspiracy that was proved was between the two defendants? Well, it was between— Because there was no showing of interdependence between— It was between the defendants and others. Right. Well, as with those others, there was no showing of interdependence between Mallory, Chacon, all of the Andrade. With respect to the second half of the conspiracy, is that what you're—the four individuals? Yes. Right, but you don't have to prove that sort of interdependence. The interdependence in a chain conspiracy of the sort that we're looking at here, right, you have the Colombians who are supplying the processed cocaine. They were moving it through— I think chain conspiracies still require some, at least, recognition that there are other people in the chain. Yes. But because these were all geographically limited and time limited, and the argument of the prosecutor in the case was quite explicit as to these folks had no idea about the others, no idea about what else was going on. And so it seems to me—it's not whether they haven't challenged sufficiency of the evidence for the single conspiracy, but it seems to me a bit hard to say that no rational juror could have looked at these different locations, different time, the government saying nobody had any idea about anybody else, and find multiple conspiracies and give that instruction. Well, respectfully, I think—I mean, Judge Kolar-Catelli did look at the evidence. She did take into account the geographic and temporal differences, and she ultimately concluded, based on her firsthand familiarity with this case—and she did it not once, not twice, not three times. She actually did it four separate times in her rulings—found that the record evidence did not support a fine ruler. I think it's because she didn't ever demand that there be connection between these other conspiracies, as opposed to the defendants. Understood. And that—I don't think that's completely lost for a chain conspiracy, and there's also just a separate question of whether this was a chain or these two were the center of the—what do you call it—the spoke and hub or whatever. Understood. It was not litigated below on a—there was no litigation specifically using the chain metaphor versus the hub and spoke. I do think that it is— Shouldn't the district court have done that in trying to figure out if this was— Well, it wasn't raised by—it wasn't raised by the defense. It wasn't raised by any— They raised the multiple conspiracies— Yes. —instruction and said— But the district— Well, but the government didn't buy into the notion that this is a spoke. I think that if you look at the district court's analysis and the way the government briefed it, we viewed it as a chain conspiracy, and I think the evidence— Are you aware of chain conspiracies that have complete breaks in time where people—usually this chain is— Right. —like people are connected in time, maybe not geography. But you can— But in time, but you don't have that here. You have a couple years here, this person. Right. Then they move on to a couple years this person. Understood. Move on a couple years this person. That's not a chain. Well, I think—respectfully, I guess the way the government would view it is that it is a chain, and you can have a broken link that's replaced by a different link, right? It doesn't necessarily defeat the fact that it's a chain. And just as a matter of basic— And you say that in a chain conspiracy, nobody has to have any knowledge or awareness of the existence of the other? No. I think what the court has said in Tarantino in later cases is that it's generally—there's an implication. When you're part of a chain, it is understood that the success of the operation depends upon those above you and those below you, but you don't have to have explicit knowledge of the identities of those individuals. But that wasn't the chain that was here. This wasn't people in Colombia did this, and then people in Guatemala did this, and then people in Mexico did this to move a single product. This was in Guatemala, with the one little exception of picking some stuff up in Honduras and making it back to Guatemala, working with these people for a while, and then moving on and working with other people for—and they were all either buyers or suppliers. They weren't other parts of the chain movement. So I'm just wondering why it would have been irrational for a jury to have found that these were multiple conspiracies. Well, respectfully, I think that if we could just step back and look at it from a matter of basic conspiracy law, it's well established that once you have a conspiratorial agreement, individuals who are part of that agreement can withdraw or terminate their membership, just as other people who are not part of the conspiracy can join. It doesn't establish— So they have to be aware that there's a larger conspiracy than them. Well, there's never been any claim that they weren't—I mean, for interdependence purposes of a chain conspiracy, you don't have to be aware. So that's why there was never any—I mean, it's a little bit— You have to be aware of the chain. You may not even know the people. Yes. Well, I think the defendants and—right, you have to be aware there's a chain. Right, but so what evidence did Andrade have that there was some chain? Well, he was dealing with the defendants—first of all, I don't think we have to prove interdependence as to every single individual. The law does not require that we prove interdependence. Okay, which one? Pick one. I'm sorry? You've got to—if you have to do it as to one of them, pick one. I'm sorry, if I have to do it— Do you say there has to be no interdependence among the— There was certainly interdependence among the two defendants themselves. And that's where I started. So is that all you need? I think that is sufficient. For a chain conspiracy, I do think that is sufficient. Okay. Because the defendants themselves—I'm sorry if I wasn't clear in my answer. I thought you said no. You said no, that they weren't—that wasn't the agreement. And that wasn't the theory. Can I clarify my response then? My answer would be yes, it is sufficient if the two of them know. But also, as the— That's all you need for your conspiracy theory. That is sufficient, yes. Because, again, if this were a hub-and-spoke, if this were a Kodiakos-type case, a hub-and-spoke, I think it would be a different situation. But it wasn't litigated. The defendants never raised a claim that it should be viewed that way. Let me also just—my time is running out, if I may—just answer one other point. Even if Your Honors disagree with the government and find that there were multiple conspiracies, right? You still have to—the defense still bears the burden of proving that they were somehow prejudiced. We have walked the court through—I think the most recent decision is United States v. Cross, which is cited in our brief, which talks about the types of prejudice that can occur. There's just been no showing of prejudice. So we think the better view— At least your two defendants conspire within each other would answer that. Correct. And there's no notice problem because the indictment laid out the time frame. They were on notice that this was spanning up to 2009. They're really trying to sort of artificially cleave this into sort of the first half of the conspiracy and not look at the big picture. But they had adequate—if I may just finish my sentence. Go ahead. Finish. They had adequate notice. As I said before in response to Your Honor, there was no contemporaneous claim of surprise. And again, one other point to keep in mind, even assuming the defense is correct that we proved multiple conspiracies, they're all subsidiary within the larger conspiracy, and there's no claim that they weren't members of those smaller— But just to be clear, they don't have to prove that you only proved multiple conspiracies. No. Correct. They only have to prove that the evidence at the time of the jury instructions would have allowed a jury to consider their theory of defense. Correct. But we think on balance that they haven't met their burden and that this really is, as Judge Cole-Arcatelli said four times, a single conspiracy. But even if it's not, the judgment should still be affirmed on a lack of prejudice grounds. Okay. Thank you. Thank you, Your Honor. Mr. Capel, you were out of time, but you can take one minute. I'll tell you what. I'll give you two because I want to take up your first minute with a question. And I'd like you to respond to what Mr. Rotker just said about the absence of prejudice on the multiple conspiracy question. He said you agree you have to show prejudice, even assuming, if you're right, that there should have been— I agreed that we must show prejudice. So his point was—so what's your response to his explanation for why there's no showing of prejudice here? Well, I submit, Your Honor, that we have a constitutional error here, and therefore the court's review should be under Rule 52A, which shifts the burden of proving prejudice to the government. The government has the burden to show that there was no prejudice. Even if that's right, didn't he just do that? I'm sorry? Even if that's right, didn't he just do that? He just did? Yeah. Didn't he just explain why there's no prejudice? Your Honor, no. If but for these four witnesses, the defendants would have had the statute of limitations as a defense in this case. They were not indicted until six years after the end of the first— Excuse me. The very thing you say in your brief about prejudice—tell me if I'm wrong about this. In your brief, you say that the district court's refusal to give a multiple conspiracy instruction caused surprise at trial. That's what your brief says the prejudice was, right? Well, my brief also said that they were prejudiced because of the failure—because they were not permitted to make the statute of limitations argument. They lost that argument. That's part of my argument also. Okay. I took up your two minutes. Would you like—is there something else you'd like to add? Oh, that the—in terms of showing—the trial court wrote that the fact finder may find multiple conspiracies exist where the record evidence shows that one defendant was involved in a conspiracy involving certain parties while the other defendant was involved in a separate and distinct conspiracy which involved parties distinct from those in the first conspiracy. There is evidence, and there was evidence presented that Waldemar was involved in a conspiracy with Sebastiano Cotton while Elias was involved in a—may have been involved in a conspiracy with Walter Montejo Moretta. And so we have to at least—we satisfied the court's, trial court's definition of where—of what you need to find multiple conspiracies. Okay. Go ahead and finish your sentence. Therefore, although the evidence may have been small, all you needed was a scintilla of evidence in order to get this to the jury. It should have been a jury question. Okay, great. Thank you very much. Case is submitted. Case number 19-5052. North American Butterfly Association Appellant versus Chad F. Wolf. In his official capacity as Acting Secretary, United States Department of Homeland Security, et al. Mr. Beacon for the appellant. Mr. Buell for the appellant. Thank you.
judges: Tatel, Millett, Pillard